Citation Nr: 1823348 
Decision Date: 04/17/18 Archive Date: 04/25/18

DOCKET NO. 13-35 400 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUES

1. Entitlement of service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD).

2. Entitlement to service connection for left ear hearing loss, to include as secondary to service-connected bilateral external otitis. 

3. Entitlement to a compensable disability rating for external otitis.

4. Entitlement to a disability rating in excess of 10 percent for pulmonary nodule, coin lesion.

5. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU). 


REPRESENTATION

Veteran represented by: Missouri Veterans Commission
ATTORNEY FOR THE BOARD

M. Thompson, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Army from December 1976 to July 1978. This matter comes before the Board of Veterans' Appeals (Board) on appeal from July 2009 and September 2011 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas. 

These matters were remanded by the Board in November 2016 for further development and has since been returned to the Board for appellate review. 

The issues of entitlement to a rating in excess of 10 percent for pulmonary nodule and entitlement to TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The stressor event of military sexual trauma occurred during active duty service. 

2. The Veteran is diagnosed with PTSD that is the result of military sexual trauma.

3. The Veteran has a current diagnosis of left ear hearing loss; the most probative evidence of record establishes that the left ear hearing loss is caused by, or related to, her active duty.

4. The Veteran's chronic external otitis is not manifested by swelling, dry and scaly or serous discharge, and itching requiring frequent and prolonged treatment. 


CONCLUSIONS OF LAW

1. The criteria for service connection for PTSD have been met. 38 U.S.C. § 1131 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304(f) (2017).

2. The criteria for service connection for left ear hearing loss have been met. 38 U.S.C. §§ 1101, 1131, 1154(b), 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.385 (2017).

3. The criteria for a compensable rating for chronic external otitis have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.87, Diagnostic Code 6210 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

Neither the Veteran nor her representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board"); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

II. Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1131 (2012); 38 C.F.R. § 3.303(a) (2017). To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service - the so-called "nexus" requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). Service connection may be granted for any disease initially diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2017). 

In addition, service connection for certain chronic diseases, including psychoses and sensorineural hearing loss, may be established on a presumptive basis by showing that the condition manifested to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C. §§ 1101, 1112, 1113, 1131, 1137 (2012); 38 C.F.R. §§ 3.307, 3.309(a) (2017); Fountain v. McDonald, 27 Vet. App. 258, 271-72 (2015). Although the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. 38 U.S.C. §§ 1101, 1112, 1113 (2012); 38 C.F.R. §§ 3.307, 3.309(a) (2017).

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. If chronicity in service is not established, a showing of continuity of symptoms after discharge may support the claim. 38 C.F.R. §§ 3.303(b), 3.309 (2017); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Regulations also provide that service connection may be granted for a disability diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability is due to disease or injury which was incurred in or aggravated by service. 38 C.F.R. § 3.303 (d) (2017).

In relevant part, 38 U.S.C. § 1154(a) requires that VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability or death benefits. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). The United States Court of Appeals for the Federal Circuit has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d at 1337 ("[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence"); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (lay testimony is competent to establish the presence of observable symptomatology). Once evidence is determined to be competent, the Board must then determine whether such evidence is also credible. See Layno, 6 Vet. App. at 469 (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted")). 

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107(b) (2012); 38 C.F.R. § 3.102 (2017). When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert. v. Derwinski, 1 Vet. App. 49, 55 (1990). 

PTSD

In order to establish service connection for PTSD, the evidence of record must include a medical diagnosis of the condition in accordance with 38 C.F.R. § 4.125(a); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304(f) (2017).

At the outset, the Board is mindful that veterans claiming service connection for PTSD due to personal assault face unique problems documenting their claims. Since assault is an extremely personal and sensitive issue, many incidents of personal assault are not officially reported, and victims of this type of in-service trauma may find it difficult to produce evidence to support the occurrence of the stressor. See Proposed Rule, PTSD Based on Personal Assault, 65 Fed. Reg. 61,132 (Oct. 16, 2000) ("Many incidents of in-service personal assault are not officially reported, and veterans may find it difficult to produce evidence to prove the occurrence of this type of stressor"). 

Accordingly, the regulations governing PTSD provide that where a claim is based on an in-service personal assault, evidence from sources other than the Veteran's service records may corroborate the Veteran's account of the stressor incident. Examples of such evidence include, but are not limited to: records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, or physicians; pregnancy tests or tests for sexually transmitted diseases; and statements from family members, roommates, fellow service members, or clergy. Evidence of behavior changes following the claimed assault is one type of relevant evidence that may be found in these sources. Examples of behavior changes that may constitute credible evidence of the stressor include, but are not limited to: a request for a transfer to another military duty assignment; deterioration in work performance; substance abuse; episodes of depression, panic attacks, or anxiety without an identifiable cause; or unexplained economic or social behavior changes. 38 C.F.R. § 3.304(f)(5) (2017).

Unlike in other PTSD claims, in PTSD claims based on personal assault, an after-the-fact medical opinion can serve as credible supporting evidence of the stressor. See Menegassi v. Shinseki, 638 F.3d 1379 (Fed. Cir. 2011). 

In cases involving an allegation that PTSD is connected to personal assault, the Federal Circuit has held that "the absence of a service record documenting an unreported sexual assault is not pertinent evidence that the sexual assault did not occur." AZ v. Shinseki, 731 F.3d 1303, 1318 (Fed. Cir. 2013) (purpose of Federal Rule of Evidence 803 does not apply because most people do not report personal assaults).

The Veteran contends that she suffers from PTSD incurred in service. Specifically, she alleges that she was the victim of sexual assault while on active duty.

The Veteran's certificate of release or discharge from active duty indicates that she served four months in Germany. On the October 1976 service treatment record (STR) entrance examination report of medical history, the Veteran did not indicate that she had depression or excessive worry, frequent trouble sleeping, or nervous trouble of any sort. In an undated STR, the Veteran was counseled by the crisis team for depression and intoxication. The medical provider noted that the Veteran had a history of appendectomy and pelvic inflammatory disease. The Veteran was observed to be crying and depressed but was cooperative. She stated that she had been drinking for three weeks. The medical provider's impression was mild alcoholic intoxication. 

In a June 1978 STR psychological evaluation, the Veteran's Command stated that the Veteran desired discharge because she was having difficulty coping with problems and difficulty with her job as a cook. The Command stated that the Veteran's retention potential was poor. The Veteran stated that she had difficulty adjusting to time and social environment at the barracks. The Veteran stated that she did not want to come to the family readiness group and admitted that she would not alter her negative attitude. The medical provider observed that the Veteran was alert, coherent, rational and oriented. He noted that her intelligence appeared average and her memory, perception, concentration, thinking, and speech were within normal limits. He stated that her affect was tearful; she appeared tired and mildly depressed; insight and judgement were marginal; and she had a fairly fixed unchanging attitude. The medical provider found that the Veteran's impulse control was poor. The medical provider concluded that she was not suffering from psychosis, thought disorder, mental deficiency, or serious mental illness. He further found that the Veteran appeared to be an individual who had experienced inordinate amount of stress and was doing her best to psychologically cope with the problems. The medical provider stated that with the Veteran's presenting problems, she may have difficulty coping with the demands of the military. The medical provider diagnosed the Veteran with occupational maladjustment. 

On the July 1978 STR separation examination report of medical history, the Veteran reported that she experienced frequent trouble sleeping, depression or excessive worry, and nervous trouble. On the July 1978 STR report of mental status evaluation, the medical provider found that the Veteran's behavior was normal; she was fully alert; fully oriented; had level mood; clear thinking process; normal thought content; and good memory. The medical provider found that the Veteran had no significant mental illness, was mentally responsible, able to distinguish right from wrong, able to adhere to the right, had the mental capacity to understand Board proceedings, and met retention standards. She was recommended for honorable discharge because of her inability to adjust to military life because of anxiety, depression, and stress. The recommendation further stated that the Veteran did not have any listed misconduct, but was counseled one time. 

In a January 2003 VA treatment letter in records from Dr. C.B.E. the Veteran stated that she underwent a hysterectomy at 19 years of age and reported that many of her psychiatric symptoms started at the time of surgery. The Veteran stated that the traumatic and permanent change had a severe negative impact on her self-image and life plan. 

In an August 2009 statement in support of claim for PTSD secondary to personal trauma, the Veteran stated that a personal assault occurred in August 1977 when she went to the hospital for ten days while serving at Fort Polk. The Veteran stated that doctor told the Veteran that she had an infection and would be operated on. The Veteran stated that her parents were present with her at the hospital. The Veteran also stated that a personal assault also occurred in January 1978 at the barracks in Germany. After the assault, the Veteran stated that she was picked up by MPs. She stated that after the personal assaults there was an increase in the use of her leave, and after separation from service she began abusing prescribed pain medication. 

In a November 2012 statement in support of claim the Veteran stated that between September 1980 and June 1981 at Fort Carson, Colorado she was the victim of a personal sexual assault by three men. She also stated that experienced a personal assault from a Sargent and she felt that she could not refuse his advances. 

On a July 2013 VA examination, the examiner diagnosed the Veteran with chronic PTSD from military sexual assault. The examiner opined that the Veteran's PTSD was at least as likely as not incurred in or caused by in-service personal assault. The examiner reasoned that the Veteran endorsed symptoms of PTSD related to a personal assault in 1981. The examiner found that the personal assault was not in the Veteran's records; however the Veteran stated she did try to report the incident and was reprimanded. The examiner further reasoned that the Veteran did have behavior changes and excess drinking after the personal assaults and therefore the examiner opined that the Veteran's PTSD is at least as likely as not related to military personal assaults. 

In the December 2013 substantive appeal the Veteran stated that she suffered a personal assault by multiple people at one time while stationed in Germany and although she did not report the personal assault, it did happen. 

In a May 2017 lay statement, the Veteran's brother stated that prior to the Veteran being stationed in Germany, she was very proud to be a soldier. Prior to going to Germany, the brother stated that the Veteran was responsible, sweet, loving, and caring. When she returned from Germany, her brother observed that she had medical and mental issues and was hospitalized. He also observed that the Veteran was moody, despondent, angry, hateful, depressed, and blamed others for her problems. The brother observed that she was abusive towards their parents and he became distant from her. Upon her return, the brother also observed that the Veteran abused alcohol and prescription and non-prescription drugs. 

In a May 2017 lay statement, the Veteran's ex-boyfriend stated that he and the Veteran were in a relationship from 1987 to 2011. During that time, he observed the Veteran go through many stages of depression and various medications. He stated that there were many nights where he was awakened by the Veteran screaming and crying in her sleep. He stated that when he woke her up she would cry and shake. The Veteran then told him about the personal assault in the Army. 

Upon careful review of the record, the Board finds that entitlement to service connection for PTSD is warranted. 

First, there is sufficient evidence to conclude the Veteran has a current diagnosis of PTSD. The July 2013 VA examiner found the Veteran to have a diagnosis of PTSD from military sexual trauma. 

Second, the Board finds that the Veteran's account of an in-service sexual assault is credible. The Veteran reported that the MST occurred while she was serving in Germany in early 1978. The Veteran's STRs indicate that she was treated by the crisis team. Although this record is undated, this treatment occurred after her hysterectomy in August 1977. Then in June 1978 the Veteran's Commander recommended that she be discharged for "difficulty coping with problems" and believed that retention potential was poor. However, the records also showed that the Veteran had no disciplinary action against her. The July 1978 psychological evaluation indicated that the Veteran was depressed, alert, oriented, rational and coherent, but also found that she had poor impulse control. The July 1978 psychological evaluator diagnosed the Veteran with occupational maladjustment. On the July 1978 mental status examination the medical provider found that the Veteran met the standards for retention. The Veteran was then honorably discharged. The Veteran was discharge from the military and told to report to the out-processing branch in Germany, evidencing her assignment there at the time discharge. Further, in a May 2017 lay statement, her brother observed a drastic change in the Veteran's demeanor, mood, and behavior after her return from Germany and was later told of the sexual assault that occurred prior to her return. The Board finds the in-service crisis treatment, conflicting psychological evaluations prior to discharge from service in the months following the asserted assault, and the lay statement from her brother, corroborates the Veteran's version of events in early 1978, and the Board finds her to be credible. Accordingly, there is sufficient evidence that the Veteran was sexually assaulted in service. 

Finally, the July 2013 VA examiner assessed that the Veteran has PTSD related to MST. The Board finds the July 2013 VA examination to be adequate, as the psychiatrist elicited a detailed history form the Veteran. In so finding, the Board acknowledges that the VA examiner found the Veteran's PTSD to be due to an assault that allegedly occurred in 1981, after the Veteran had left active duty. However, as discussed above-and despite the questionable accuracy of the date reported by the Veteran more than three decades after the fact-the Board finds the Veteran's report of the in-service assault to be credible. The Board thus finds that the preponderance of the evidence supports the conclusion that the diagnosed PTSD is etiologically related to in-service sexual assault. The Board concludes that the preponderance of the evidence supports a finding that the Veteran's current PTSD resulted from military sexual trauma. Entitlement to service connection for PTSD is warranted. 38 U.S.C. 5107(b) (2012); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Left Ear Hearing Loss

For the purposes of applying the laws administered by VA, impaired hearing is considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, and 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of those frequencies are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385 (2017). It has been established that 38 C.F.R. § 3.385 does not preclude service connection for a current hearing disability where hearing was within normal limits on audiometric testing at separation from service if there is sufficient evidence to demonstrate a medical relationship between the Veteran's in-service exposure to loud noise and current disability. See Hensley v. Brown, 5 Vet. App. 155 (1993). The Board notes that the directives in Hensley are consistent with 38 C.F.R. § 3.303(d).

According to the service treatment records (STRs), the Veteran experienced a threshold shift from entrance to separation from service. However, the STRs are silent for any complaints of hearing loss. The Veteran's military personnel record indicates that she was a chef and that she was awarded a M-16 rifle expert badge, which indicates noise exposure to weapons fire. 

On an October 2010 VA examination the Veteran stated that her ears do not hurt but occasionally feel clogged. The Veteran thinks that she has to turn up the TV in order to hear it and that she hears better in the left ear than the right. The examiner diagnosed the Veteran with bilateral sensorineural hearing loss, moderate in the left ear. The examiner opined that the etiology of the hearing loss is at least as likely as not noise exposure from working as a dancer after discharge. The examiner stated that there was some military noise exposure working as cook but explained that the noise in service was minimal and the hearing loss recorded prior to discharge was low frequency and not related to noise exposure. 

In a September 2012 notice of disagreement the Veteran stated that she has had difficulty hearing since she was in service from 1976 to 1978. 

In a September 2012 letter from Dr. C.B.E., the doctor stated that on a June 2012 examination he observed old scar changes of the tympanic membranes bilaterally, consistent with previous chronic ear infections. Dr. C.B.E. indicated that there is diminished hearing noted in the right ear compared with the left. Dr. C.B.E. stated that it is feasible that the Veteran's present hearing loss on the right side is consistent with previous chronic ear infections. The doctor indicated that records of the Veteran's chronic ear drainage were lost in an office fire in 1994. 

On the November 2017 VA examination the Veteran reported difficulty understanding customer orders when she worked as a waitress and she now has difficulty on the phone. The examiner diagnosed the Veteran with mixed hearing loss in the left ear. The examiner found that there was a permanent positive threshold shift greater than normal in the left ear. The examiner opined that the Veteran's left ear hearing loss is at least as likely as not caused by the Veteran's service. The examiner reasoned that the Veteran's separation evaluation indicated a mild low frequency rising hearing loss consistent with middle ear disorder. The examiner found that the VA examination indicated a rising mixed hearing loss with similar configuration and progression of hearing loss noted bilaterally since 1978. 

Upon review of the record, the Board finds that the most probative evidence of record establishes that the Veteran's left ear hearing loss is related to her active service. The Veteran's STRs reveal that she had normal hearing during her service for VA disability purposes. However, the Board notes that audiometric data from the July 1978 separation examination included increased puretone thresholds in the frequency range of 500 to 4,000 Hertz. In addition, the Board has carefully reviewed the Veteran's statements of record. The Veteran stated that she has experienced hearing loss since her time in service. The Board finds that the Veteran, as a lay person, is competent to testify to experiencing decreased hearing acuity. See Layno v. Brown, 6 Vet. App. at 470. Moreover, there is no evidence to doubt her credibility. The Veteran's statements reflect a continuity of symptomatology of hearing loss. Accordingly, the Board assigns great probative weight to the Veteran's statements regarding the inception and persistence of her hearing loss. 38 C.F.R. § 3.303(b) (2017).

Further, although the November 2017 VA examination did not find the Veteran to have hearing loss in the left ear for VA compensation purposes, the examiner found that the Veteran's left ear hearing loss was related to service. The examiner's opinion is adequate, as it addresses the Veteran's threshold shift in-service and is in line with Hensley v. Brown and 38 C.F.R. § 3.385. Therefore, the Board finds that the November 2017 VA opinion is adequate. Further, the Veteran was assigned a diagnosis of left ear hearing loss in a September 2011 audiological evaluation. The United States Court of Appeals for Veterans Claims has held that the presence of a disability at any time during the claims process can justify a grant of service connection, even where the most recent diagnosis is negative. McClain v. Nicholson, 21 Vet. App. 319 (2007). 

Although the October 2010 VA examination confirmed a current diagnosis for bilateral hearing loss, the examiner found that the Veteran's hearing loss not likely caused by post-service employment. There is no evidence to doubt the examiner's credibility. Nonetheless, the examiner provided an opinion based on a legally insufficient rationale. The examiner's sole reason for her negative opinion is that the Veteran had post-service noise exposure, without addressing her enlistment and separation examinations showing threshold shifts. Therefore, the Board finds that the October 2010 VA opinion is inadequate with respect to the question of nexus, because the examiner did not address the Veteran's threshold shift in hearing acuity from enlistment to and separation from service or in-service noise exposure to weapons fire. Accordingly, the Board assigns less probative weight to the opinion.

As such, based on the most probative evidence of record, the Board finds that the Veteran's left ear hearing loss is related to her active service. Therefore, service connection for left hearing loss is warranted.

III. Increased Rating: External Otitis

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Schedule), found in 38 C.F.R. Part 4 (2017). The Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.1 (2017). Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2017). When reasonable doubt arises as to the degree of disability, such doubt will be resolved in the Veteran's favor. 38 C.F.R. § 4.3 (2017). 

In considering the severity of a disability, it is essential to trace the medical history of the Veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41 (2017). Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of any disability present. 38 C.F.R. § 4.2 (2017); Peyton v. Derwinski, 1 Vet. App. 282 (1991). Although the regulations do not give past medical reports precedence over current findings, the Board is to consider the Veteran's medical history in determining the applicability of a higher rating for the entire period in which the appeal has been pending. Powell v. West, 13 Vet. App. 31, 34 (1999). 

Where entitlement to compensation has been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Where VA's adjudication of the claim for increase is lengthy and factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings, different or "staged" ratings may be assigned for such different periods of time. Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007). When adjudicating an increased rating claim, the relevant time period for consideration is the time period one year before the claim was filed. Hart, 21 Vet. App. at 509.

The Veteran is in receipt of a noncompensable rating under 38 C.F.R. § 4.87, Diagnostic Code 6210, for chronic otitis externa. A 10 percent rating is assigned for otitis externa that is productive of swelling, dry and scaly or serous discharge, and itching requiring frequent and prolonged treatment. The 10 percent evaluation is the maximum rating for otitis externa under Diagnostic Code 6210. 

On an October 2010 VA examination the examiner diagnosed the Veteran with bilateral external otitis. The Veteran stated that her ears occasionally itch. Upon examination, the examiner observed that the Veteran's external canals were open and normal bilaterally. The examiner found the tympanic membranes were intact and normal bilaterally. The examiner observed no active ear disease and neither ear was actively infected. 

In an April 2011 VA treatment record the medical provider observed that the Veteran's ears had normal external auditory canals and tympanic membranes. In November 2015 VA treatment record the Veteran complained of her ears itching and requested an antibiotic ointment. 

On the November 2017 VA examination the examiner observed that the external ear, ear canal, and tympanic membrane were normal. No swelling or discharge was observed.

The Veteran is competent to describe her symptoms associated with external otitis and is competent to describe her observations, and the Board finds that her statements are credible. However, the Veteran's symptom of occasional itching does not meet the requirements for the rating for otitis externa. As otitis externa is specifically governed by Diagnostic Code 6210, no rating by analogy under other codes is permissible; thus, a rating under another code provision is not warranted. Copeland, supra. Here, even acknowledging her occasional complaints of itching in the ears, there is simply no evidence that the Veteran has experienced swelling and discharge requiring frequent and prolonged treatment to warrant a 10 percent rating under Diagnostic Code 6210. 

For these reasons, the evidence preponderates against the claim for a compensable rating for otitis externa. The Board finds that the benefit-of-the-doubt standard of proof does not apply. 38 U.S.C. § 5107(b) (2012).


ORDER

Entitlement to service connection for PTSD is granted. 

Entitlement to service connection for left ear hearing loss is granted. 

Entitlement to a compensable disability rating for external otitis is denied. 


REMAND

Remand is required to obtain an adequate VA examination to ascertain the current level of severity of the Veteran's pulmonary nodule. A medical opinion report is considered adequate "where it is based on consideration of the veteran's prior medical history and examinations and also describes the disability, if any, in sufficient detail so that the Board's evaluation of the claimed disability will be a fully informed one." Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007).

Here, the November 2017 VA examiner for the Veteran's pulmonary nodule did not administer a pulmonary function test (PFT) because of a prior medical provider's findings of a normal spirometry test and a normal gas inhalation test. However 38 C.F.R. § 4.96 provides that PFTs are required to evaluate pulmonary emphysema and chronic obstructive pulmonary disease (COPD), for which the Veteran has been diagnosed. Further, the November 2017 VA examiner diagnosed emphysema but did not clarify whether that disorder is a progression of, or otherwise etiologically related to, the Veteran's service-connected pulmonary nodule. Therefore a new VA examination is required. 

Concerning the claim for entitlement to a TDIU, because the current level of severity of the Veteran's pulmonary nodule could affect the claim for entitlement to a TDIU, the Board finds that the claim for entitlement to a TDIU is inextricably intertwined with the claim of increased rating for the pulmonary nodule. See Parker v. Brown, 7 Vet. App. 116 (1994); Harris v. Derwinski, 1 Vet. App. 180, 183 (1991). As resolution of the claim for increased rating could well impact the claim on appeal for entitlement to a TDIU, these issues must be considered together.

Accordingly, the case is REMANDED for the following action:

1. Provide the Veteran with an appropriate examination to determine the severity of the service-connected pulmonary nodule. The entire claims file should be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. The examiner must utilize the appropriate Disability Benefits Questionnaire. 

The examiner must clarify what pulmonary diagnoses the Veteran currently experiences. For each such disorder, to include emphysema as diagnosed by the November 2017 VA examiner, the examiner must opine as to whether the disorder is a progression of, or otherwise etiologically linked to, the Veteran's pulmonary nodule. 

2. Review the examination report to ensure that it is in compliance with the directives of this remand. If the report is deficient in any manner, the AOJ must implement corrective procedures. Stegall v. West, 11 Vet. App. 268, 271 (1998).

3. After completing the above action, and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, the claims must be readjudicated. If any claim remains denied, a supplemental statement of the case must be provided to the Veteran and her representative. After the Veteran and her representative have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).




______________________________________________
CAROLINE B. FLEMING
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs